Arnold L. Fein, J.
At an auction sale conducted by defendant, City of New York, on November 18, 1965, plaintiff was the successful bidder for three vacant lots in The Bronx and made a down payment of $100. There was at the time of the sale and prior thereto a metal fence runnning across two of the lots from an adjoining lot, owned by a third party, neither sold nor purchased in this sale. The memorandum of sale provided that the property was sold, “ Subject to covenants, restrictions of record and easements affecting the subject property provided same does not render the title unmarketable,” and “as is on the date of closing title ”. The purchaser could not remove the *149 fence, without risk of a lawsuit. It was uncontradicted on the trial that it was on the property by virtue of an easement in favor of the adjoining property owner, over whose property it also ran. Between the date of the sale and the date set for closing a substantial quantity of debris was dumped on the lots, either by the city or some third parties. The debris could be removed only at substantial cost. The lots were clean and level at the time they were inspected prior to the auction.
Upon being advised by plaintiff of these objections to taking title, the Department of Real Estate of the City of New York notified plaintiff in writing it would look into the matter, stating: “ It may be that it is possible, to eliminate your objections ”. Conferences and negotiations between plaintiff and the department and also with the Corporation Counsel continued for some months, plaintiff demanding that his deposit be returned or that the defendant undertake to remove the fence and the debris. On July 22, 1966, the Corporation Counsel of the City of New York advised plaintiff, in writing, his title objections were “ invalid ” and demanded he close title in accordance with the memorandum of sale.
Plaintiff refused to close title and instituted the present action in person for ‘1 Breach of contract on purchase of real property ”. Defendant contends the action is barred because plaintiff failed to present his claim to the Comptroller of the City of New York for adjustment, pursuant to section 394a-1.0 of the Administrative Code of the City of New York. Moreover, it alleges the existence of the fence is not a valid objection to title because (1) it runs within the lines of one of the lots; (2) it is not an easement; and (3) it is removable by plaintiff, who knew of its existence at the time of his bid. It further argues plaintiff is obligated to accept the property in its ‘ ‘ as is ” condition on the date set for closing despite the fact that the debris was placed on the lot after the auction sale.
A written demand on the Comptroller has long been a condition precedent to instituting actions against the city. (Pulitzer v. City of New York, 48 App. Div. 6; Ruprecht v. City of New York, 102 App. Div. 309; McGovern v. City of New York, 160 Misc. 714, affd. 247 App. Div. 775, affd. 272 N. Y. 455.) However, there is substantial authority limiting the application of the Administrative Code section to actions in ‘ ‘ negligence or nuisance ”. (Harder Realty & Constr. Co. v. City of New York, 64 N. Y. S. 2d 310, 320; Flaxman v. City of New York, 98 Misc. 88, affd. 178 App. Div. 935; Levine v. City of New York, 249 App. Div. 625.) The distinction appears to be premised on a determination that the statute, contract or other basis *150 for liability imported absolute liability or that there was a continuing wrong. In such cases service of the notice would be an “ idle ceremony ”. (Friedman & Son v. City of New York, 237 App. Div. 646; Flaxman v. City of New York, supra; Penfield v. City of New York, 115 App. Div. 502; Sammons v. City of Gloversville, 175 N. Y. 346.) Ruprecht (supra) and McGovern (supra) are distinguishable. In Ruprecht, liability and amount were both in issue. McGovern turned on when the short Statute of Limitations, imposed by the contract, began to run. In none of these cases was the action brought to recover moneys paid to the city, recoverable pursuant to the terms of its contract, if the city failed, refused or was unable to fulfill its part of the bargain.
Here, plaintiff sues to recover his down payment under a contract, drawn by defendant, which provides, 1 ‘ where the City is unable to convey a marketable title * * * the City’s sole liability * * * shall be limited to the return to the successful bidder of all payments made to the City on account of the purchase, and the net cost of title examination without title insurance, as actually charged to the purchaser by the title company which is engaged to make a search ”.
There is nothing to settle or negotiate, nor is there any claim for damages. Although the language of section 394a~1.0, referring to actions ‘ ‘ for any cause whatever ’ ’ founded upon a “ demand, claim or claims ”, seems to be preclusive, the cited eases establish no need to comply where to do so would be a fruitless exercise. A fortiori, where there is merely an attempt to recover one’s own money, pursuant to express language of a eonract. Moreover, here the Corporation Counsel of the City of "New York, defendant’s chief law officer, had made a determination on behalf of the city that plaintiff’s claims were without legal merit and that he was obligated to close the title and pay the balance due. The Comptroller of the city would presumably be bound by the determination of its chief law-officer and therefore would have no basis for adjustment absent a determination by a court. No demand pursuant to .the Administrative Code was necessary, the Corporation Counsel having rejected plaintiff’s demand.
The metal fence was an encroachment constituting a valid objection to title. (Fossume v. Requa, 218 N. Y. 339; Clark v. Riverhead Sav. Bank, 260 App. Div. 1022, affd. 286 N. Y. 588.) A purchaser, even from a municipality, is not required to purchase property in such condition that he may be involved in a lawsuit to remove an encroachment even though he had knowledge of its existence at the time he bid at the auction, unless *151 he expressly undertook to purchase subject to the easement or encroachment. (Pryor v. City of Buffalo, 197 N. Y. 123; Fossume v. Requa, supra; Clark v. Riverhead Sav. Bank, supra.)
The provision requiring the purchaser to take title “as is ” on the date set for closing cannot be construed as obligating a purchaser to take title where the dumping of debris in substantial quantities imposes the burden on the purchaser of an expenditure of substantial moneys to remove the same. The purpose of the “as is ” clause is to negate the existence of any representations by the seller as to the particular condition, fitness and type of construction of the premises sold. It merely means that the purchaser must take that for which he bargained, reasonable use, wear, tear and natural deterioration excepted. (Montague v. Bank for Sav., 181 Misc. 863.) It is no longer the law that the risk of loss between the time of contract and closing is on the purchaser. (General Obligations Law, § 5-1311; Heerdt v. Brand, 272 App. Div. 143.) Such risk is only on the purchaser where he has title or possession, or the contract imposes it. This contract by implication recognizes that fact by imposing the risk of loss or damage by fire upon the purchaser. The failure to refer to any other loss indicates that the risk of loss of the nature here involved was on the seller, even if caused by vandals. (New York Med. Coll. v. 15-21 East 111 St., Corp. 90 N. Y. S. 2d 591; Approved Prop., v. City of New York, N. Y. L. J., Sept. 1,1966, p. 16, col. 7.)
Plaintiff is not entitled to recover the cost of title examination since he eoncededly made his own search. Although he is a lawyer apparently competent to make his own search, the contract expressly limits the liability of the city to actual charges made to a purchaser by a title company. He is, however, entitled to a return of the $10 paid to the auctioneer as a fee. Accordingly, after trial, judgment for the plaintiff in the sum of $110, with appropriate interest.